[Flacke *v.* The Commonwealth.]

for sixty-three days amounting to $6 75 and the fees for the protest of the old note, which were $1 75, the utmost amount of the note which Bates authorized Wynn to indorse was $408 50. The note offered in evidence was for $410. There was, therefore, no authority shown from Bates to Wynn to indorse the particular note in suit.

*Johnson, Lindsey & Parmlee* for defendant in error.

Wynn's evidence showed ample authority to indorse Bates' name for a note for $410. The question of the amount which the bank could recover was an independent and separate question from the question of authority given to Wynn to indorse the note. These questions were plainly and fairly submitted to the jury, and it is not claimed that the jury found for the plaintiff any more than the amount of the old note with legal interest and protest fees added.

October 1, 1883.—Per Curiam : We have carefully examined the evidence and considered the several specifications of error. The law is correctly declared and the evidence was sufficient to justify its submission to the jury. There was no error in admitting the note in evidence. There was some evidence of authority in the agent to make it for the sum therein specified.

Judgment affirmed.

---

January Term, 1883, No. 177.                    May 24, 1883.

# Flacke *v.* The Commonwealth.

1. The eighth section of the act of April 20, 1858, P. L., 367, which provides " That manufacturers and producers of cider and domestic wines, and bottlers of cider, perry, ale, porter, or beer, not otherwise engaged in the sale of intoxicating liquors, nor in keeping any tavern, oyster-house, or cellar restaurant, or place of amusement, entertainment or refreshment, shall be allowed to sell the same by the bottle, or domestic wines and cider by the gallon, without taking out license : provided that such liquor is not drank upon the premises where sold, nor at any place provided by such seller for that purpose " is repealed by section 4 of the act of March 22, 1867, P. L., 41.

2. Persons selling ale and beer by the bottle and not otherwise must take out a license from the Quarter Sessions of the county in which they carry on business, under the second section of the act of April 12, 1875, P. L., 40.

3. A license from the county treasurer therefore does not authorize the sale of malt or brewed liquors by the single pint and quart bottle.

[Flacke v. The Commonwealth.]

Before MERCUR, C. J.; GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, J. J.; PAXSON, J., absent.

Error to the Court of Quarter Sessions of the *County of Warren*.

Indictment of Henry Flacke for selling liquor without a license, and true bill found thereon.

On the trial at December sessions, 1882, before BROWN, P. J., the only evidence presented consisted of the admissions of the defendant below that he had sold ale and beer as a bottler by the case and in pint and quart bottles, as the purchaser desired ; he also testified that at the time of making such sales he was not otherwise engaged in the sale of intoxicating liquors, nor in keeping any tavern, oyster-house, or cellar, restaurant, or place of amusement, entertainment, or refreshment ; that the sales were only of beer and ale, and not to be drank on defendant's premises, nor at any place provided by him for that purpose ; that at the time of the sales he held a bottler's license issued to him by the county treasurer of Warren county, of which the following is a copy :

" COMMONWEALTH OF PENNSYLVANIA, }
　　　　*Warren County.*　　　　 }

Be it known that Henry Flacke, of Warren, has paid me, for the use of the Commonwealth, fifty dollars, which entitles him to bottle cider, perry, ale, porter, or beer, and sell the same by the bottle, or domestic wine and cider by the gallon, for one year, from November 28, 1881, to November 28, 1882, agreeably to the act of Assembly in such case made and provided.

In witness whereof I hereunto set my hand and affix my official seal, at Warren, the 23d day of November, A. D. 1881.

　　　　　　　F. M. KNAPP, *Treasurer.*"

The defendant presented the following point :

The admitted facts in the case being that the defendant, at the time of making the sales for which this indictment is found, was a bottler of beer and ale, and not otherwise engaged in the sale of intoxicating liquors, nor in keeping any tavern, oyster-house, or cellar restaurant, or place of amusement, entertainment, or refreshment, and that the sales made by the defendant were only of beer and ale by the single bottle or case, and not to be drank on the defendant's premises, nor at any place provided by him for that purpose ; the defendant at that time holding a bottlers' license from the county treasurer of

[Flacke *v.* The Commonwealth.]

Warren county he cannot be convicted of selling liquor without a license.

*Answer.*—This point is answered in the negative. (First assignment of error.)

The Court charged, *inter alia*, as follows :

"Under the admitted facts, it becomes a question of law whether the defendant is, or is not, guilty of the offense of selling malt and brewed liquors without a license so to do, and it is the duty of the Court to advise you on this question.

By the 32d section of the act of Assembly regulating the sale of intoxicating liquors, passed the 31st day of March, 1856, it is provided, 'That no person pursuing exclusively the business of bottlers of cider, perry, ale, porter, or beer, and not at the same time following or engaging in any way in the business of keeping any hotel, inn, or tavern, restaurant, oyster-house, or cellar, or place of entertainment, amusement, or refreshment, shall be required to take out a license under the provisions of this law.'

By a supplement to the act of 1856, passed on the 20th day of April, 1858, it provided, 'That manufacturers and producers of cider and domestic wines, and bottlers of cider, perry, .ale, porter, or beer, not otherwise engaged in the sale of intoxicating liquors, nor in keeping any tavern, oyster-house, or cellar restaurant, or place of amusement, entertainment, or refreshment, shall be allowed to sell the same by the bottle, or domestic wines and cider by the gallon, without taking out a license.'

Under the act of 1856, before referred to, it is provided that such persons, that is, bottlers of cider, perry, ale, porter or beer, 'Shall not sell or deliver said cider, perry, ale, porter, or beer in less quantities than a dozen bottles at one time, nor permit any of said liquors to be drank upon the premises occupied in said business.'

You will notice that, by the act of 1858, the bottlers shall be allowed to sell by the bottle without taking out any license.

Next in order comes the act of 1867, which provides, 'That if any person, after the passage of this act, shall sell spirituous or vinous liquors, domestic wines, malt or brewed liquors without having obtained a license authorizing him so to do, such person shall, on conviction in the Court of Quarter Sessions, be fined,' and so and so.

In our view of the law the act is entirely repugnant to the provisions of the act of 1858, because, by the act

of 1858, bottlers of beer and malt liquors were entitled to sell without any license.

The act of 1867 provides that license shall first be obtained in order to entitle a party to sell malt or brewed liquors.

We next come to the act of 1875, which provides, in the second section, ' That licenses for the sale of liquors, when not otherwise provided for by special laws, may be granted by the Court of Quarter Sessions, of the proper county, at the first or second session in each year, and shall be for one year.'

Now, unless there is a special provision in the law for the granting of licenses to bottlers, to which attention has not been called, we take it that the licenses must be granted by the Court, as is provided by this section of the act of 1875.

Section 4 of the act of 1875 provides 'That any sale made of vinous, spirituous, malt, or brewed liquors, or any admixture thereof, contrary to the provisions of the law, shall be taken to be a misdemeanor, and upon conviction of the offense in the Court of Quarter Sessions of the peace of any city or county, the person so offending shall be sentenced to pay a fine,' &c.

[From the examination of the acts referred to, we are of the opinion that the license issued by the treasurer to the defendant as a bottler did not and does not authorize him to make sale of malt and brewed liquors by the single pint and quart bottle, as desired by the purchasers, and that in so doing he is guilty, as charged in the indictment, with selling malt and brewed liquors without a license.]

(Second assignment of error.)

We are strengthened in this conclusion by the consideration of the extreme care taken by the Legislature in guarding the public against the abuses and dangers incident to the unrestricted retail traffic in malt and brewed, as well as spirituous, liquors.   The applicant for an eating-house or restaurant license to sell malt and brewed liquors  must be a citizen of the United States.   He must give notice of his application.   He must come into court indorsed by twelve of his fellow-citizens as a man of temperate habits and of good ·moral character.   It must appear by certificate that such license is necessary, and before the license is granted, he must give a bond, with sureties, conditioned for the faithful observance of the law regulating the sale of this kind of liquors.

But if the law as claimed by the counsel for the defend-

[Flacke *v.* The Commonwealth.]

ant in this case be correct, then any and every person, citizen and non-citizen, temperate or intemperate, honest or dishonest, may engage in the business of selling malt and brewed liquors by the drink, simply by paying to the treasurer the sum of fifty dollars, provided only that the drink shall be furnished in the bottle instead of a glass, and that it shall be drank outside the premises of the vendor, instead of at his counter or table. We think that such is not the law, [and say to you that, under the admitted facts of the case, the defendant is guilty as charged in the fourth count of the indictment.] (Third assignment of error).

December 5, 1882.—Verdict guilty, as indicted. The Court then sentenced the defendant to pay a fine of $200 to the Commonwealth and costs of prosecution. (Fourth assignment of error).

Whereupon the defendant took this writ of error, assigning errors as above designated.

*Wilbur & Schnur* (*Brown & Stone* with them) for plaintiff in error.

By the act of the 31st of March, 1856, P. L., 207, bottlers of beer, selling not less than one dozen bottles at one time, were not required to apply to the Court of Quarter Sessions for a license, but were assessed and returned by the same person and in the same manner as provided for the appraisement of mercantile taxes, and paid not less than fifty dollars to the county treasurer, who issued to them what may be designated as a treasurer's license. That the Legislature designated as a license such paper as was received in this case by the plaintiff in error ·from the treasurer, is apparent from the legislation in regard to breweries and distilleries. (See act of April 10, 1849, P. L., 576, secs. 31 and 32). The Legislature in the acts of 1856, 1858, 1867, and 1875, regulating the sale of liquor, uses the word license as applicable either to a license granted by the treasurer or the Court of Quarter Sessions, and not as particularly specifying a privilege granted by Court of Quarter Sessions only. (See also the proviso to the 5th section of the act of 1858, P. L., 366).

Hence it is apparent that when the Legislature provided that bottlers " shall not be required to take out a license under the provisions of this law," they meant the license granted by the Court of Quarter Sessions. And that a bottler, having paid $50 to the county treasurer and re-

[Flacke v. The Commonwealth.]

ceived a license from him, was entitled to sell as provided in the said thirty-second section of the act of 1856.

The act of April 20, A. D. 1858, P. L., 365, is a supplement to the act of 1856.

The eighth section provides, "That manufacturers and producers of cider and domestic wines, and bottlers of cider, perry, ale, porter, or beer, not otherwise engaged in the sale of intoxicating liquors, nor in keeping any tavern, oyster-house, or cellar restaurant, or place of amusement, entertainment, or refreshment, shall be allowed to sell the same by the bottle, or domestic wines and cider by the gallon, without taking out a license : *Provided*, That such liquor shall not be drank upon the premises where sold, nor at any place provided by the seller for that purpose."

Under these acts bottlers procured a license from the county treasurer for $50, and sold by the bottle or case, without other license. The question here is whether subsequent legislation has made any change in this respect.

Manifestly, the legislation of 1856 and 1858 remains as before, except as modified by this act in relation to the granting of licenses to inns and taverns, and restaurants, and the difference in the fine and imprisonment to be imposed by the fourth section. The legislation of 1856 and 1858 relating to bottlers survived the act of 1867, the three acts being *in pari materia*, and part of the same system : Commonwealth v. McQuirk, 28 P. F. Smith, 300 ; Mayor v. Davis, 6 W. & S., 279 ; Erie v. Bootz, 22 Smith, 199 ; Jefferson County v. Reitz, 6 Smith, 44.

The legislation is not repealed by the act of 12th April, 1875, P. L., p. 40. The first section of that act repeals the local option law ; the object of the second section is simply to fix time when the Court shall grant such licenses as they are authorized to grant by previous legislation. The third section regulates the price and classification of licenses and provides that a bottlers' license shall not be less than $50.

*Wm. Swanson*, district attorney, and *Johnson, Lindsey & Parmlee* for defendants in error.

The right advocated here by counsel on the other side is one against which the Legislature has been fencing for over two hundred years : Act of September 22, 1676, Duke of York's Book of Laws, p. 30.

The thirty-second section of the act of 31st of March, 1856, was repealed, *eo nomine*, by the twenty-second section of the act of the 20th of April, 1858.

[Appeal of the Union Oil Co., Moerck and Falconer's Appeal, &c.]

The acts of 1856, 1858, 1867, and 1875 refer alone to licenses to be granted by the Court of Quarter Sessions. The allegation that bottlers of beer, otherwise termed beer-houses, are to obtain license, anywhere else to prosecute their nefarious business of beveraging the community, without limit as to number, certificate of character, assurance of nationality, or accountability for abuse, is not only unsupported by the legislation, but is at cross-purposes with both the Legislature and the people of Pennsylvania. No argument as to the legislative intent can add force to the explicit language of the statutes.

OCTOBER 1, 1883.—PER CURIAM : We concur in the correctness of the law as declared in the charge of the Court. The facts are unquestioned.

Therefore, on the opinion of the learned judge

Judgment affirmed. .

JANUARY TERM, 1883, Nos 66, 67, 74.                    MAY 21, 1883.

## Appeal of the Union Oil Company, Moerck and Falconer's Appeal, Appeal of Wm. R. Bole, *Guardian, et al.*

1. Upon a grant of ore lands "expressly reserving from this conveyance for the party of the first part, his heirs and assigns, the one eighth part of all the minerals or oil product produced on or from said land, to be divided between them on the land ;" it was *held*, that the language of the reservation designated a right in the grantor to the one eighth of the oil raised to the surface by the grantee, his heirs and assigns, at the pleasure and expense of the grantee and his heirs and assigns, and that, as then and not till then could the " product " be said to be produced, the grantor was entitled to his share without any deduction for expenses in producing it.

2. The measure of damages for the non-delivery to the grantor of his share of the oil so produced is the actual market value of the oil at the date of refusal to deliver with interest from that date.

3. The rule applicable to stocks on a failure to deliver should not be applied to a chattel like oil.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.; CLARK, J., absent.

Appeals of the Union Oil Company, of Moerck & Falconer, and of Wm. R. Bole, guardian of W. H. Bartle,